1  MICHAEL JASON LEE (Bar No. 206110)
2  Email: michael@mjllaw.com
   **LAW OFFICES OF MICHAEL JASON LEE, APLC**
3  4660 La Jolla Village Drive, Suite 100
   San Diego, California 92122
4  Telephone: (858) 550-9984
5  Facsimile: (858) 550-9985

6  DAVID D. MESA (Bar No. 257488)
7  Email: david.mesa@fisherbroyles.com
   **FISHERBROYLES, LLP**
8  530 Lytton Avenue, Second Floor
9  Palo Alto, CA 94301
   Telephone: (415) 915-4415
10 Facsimile: (415) 890-4845

11 Attorneys for Applicant
12 CORE COMPASS LIMITED

13

14            **UNITED STATES DISTRICT COURT**

15           **SOUTHERN DISTRICT OF CALIFORNIA**

16                   **SAN DIEGO DIVISION**

17 *In re* Application of:              )   Case No.   **23MC735**
                                        )
18 CORE COMPASS LIMITED                 )
                                        )
19                                      )   **APPLICATION TO CONDUCT**
                    Applicant           )   **DISCOVERY PURSUANT TO 28**
20                                      )   **U.S.C. § 1782; MEMORANDUM OF**
                                        )   **POINTS AND AUTHORITIES**
21 For the Issuance of a Subpoena for the )
   Taking of a Deposition and the        )
22 Production of Documents Under 28      )
   U.S.C. § 1782 to EDYL Management      )
23 LLC and Paul Lyden for Use in Foreign )
   Proceedings                           )
24                                       )
25 _____      )

26

27

28

# TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION ......................................................................... 2

II.   FACTUAL BACKGROUND............................................................ 3

    A.    The Relevant Entities (Applicant Core Compass Limited and
        Boom Financial) ....................................................................... 3

    B.    Additional Factual Allegations Underlying the Foreign Action......... 5

    C.    Processing Problems Emerge and Boom Financial Fails
        to Make a Single Payment of the $262,437.52 Owed to
        Core Compass........................................................................... 6

    D.    Evolve Bank Documents Identify EDYL Management
        as a Merchant Account Used in Boom Financial's Payment
        Processing Architecture.......................................................... 7

    E.    Foreign Proceedings ............................................................... 9

III.  THE CONTEMPLATED DISCOVERY ........................................... 9

IV.   APPLICANT'S LOCATION ........................................................ 11

V.    LEGAL STANDARD ................................................................. 11

VI.   ARGUMENT ........................................................................... 12

    A.    All Statutory and Discretionary Factors Favor Permitting
        the Requested Discovery ........................................................ 12

        1.    Core Compass's Application Satisfies the Statutory
            Requirements........................................................... 13

            a.    Applicant Is an "Interested Person.".............................. 13

b.    The Requested Discovery Is for Use in Conjunction with Proceedings Before Foreign Tribunals. .................. 13

c.    Paul Lyden Resides in and Can Be Found in the Southern District of California........................................ 14

d.    EDYL Management Resides in and Can Be Found in the Southern District of California. ........................... 15

2.    The Discretionary Factors Favor Granting the Requested Discovery ................................................................. 16

a.    Jurisdictional Reach of the Foreign Tribunal ............... 16

b.    Nature and Receptivity of Foreign Tribunal................ 16

c.    Attempt to Circumvent Foreign Proof-Gathering Restrictions and Policies................................................ 17

d.    Unduly Intrusive or Burdensome Request................... 18

VII.    CONCLUSION ............................................................................ 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d. Cir.1995) ...................................................................... 17

*Government of Ghana v. ProEnergy Servs.*, LLC,
  2011 U.S. Dist. LEXIS 75029 at *12 (W.D. Mo. June 6, 2011)........................... 17

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-MC-80215-WHO,
  2020 WL 820327, at *3 (N.D. Cal. Feb. 19, 2020)................................... 15

*In re Application of Credit Suisse Virtuoso SICAV-SIF*,
  No. 21-MC-80308-JCS, 2022 WL 1786050, at *7 (N.D. Cal. June 1, 2022).......... 15

*In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf*,
  Case No. M19-88, 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006) ................ 17

*In re Application of Grupo Qumma*, No. M 8-85 (DC),
  2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005) ..................................... 17

*In re Crown Prosecution Serv.*, 870 F.2d 686 (D.C. Cir. 1989)................................. 14

*In re Euromepa S.A.*,
  51 F.3d 1095 (2d Cir. 1995) .................................................................. 17

*In re Ex Parte Application of TPK Touch Sols. (Xiamen) Inc.*,
  2016 WL 6804600, at *2 (N.D. Cal. Nov. 17, 2016)................................... 15

*In re Letter of Request from Crown Prosecution Serv. Of United Kingdom*,
  870 F.2d 686 (D.C. Cir. 1989).................................................................. 14

*In re Letters Rogatory Issued by the National Court of First Instance in Commercial
  Matters N.23 of the Fed. Capital of the Argentinean Republic*,
  144 F.R.D. 272 n.4 (3d Cir. 1992)............................................................ 14

*In re LVL-USA* LLC, 2020 WL 6051310, at *2........................................................ 13

*In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago*,
  848 F.2d 1151 (11th Cir. 1988) .............................................................. 14

*In re Super Vitaminas, S.A.*,
  2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017)................................... 15

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782;
MEMORANDUM OF POINTS AND AUTHORITIES

*In the Matter of the Application of Oxus Gold PLC For Assistance Before a Foreign Tribunal*,
  2007 U.S. Dist. LEXIS 24061, at *18 (D.N.J. April 2, 2007) ................................. 14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ........................................................................ passim

*Khrapunov v. Prosyankin,*
  931 F.3d 922 (9th Cir. 2019) ................................................................ 11

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
  895 F.3d 238 (2nd Cir. 2018) ............................................................... 11

*Koninklijke Philips N.V.*, 2018 WL 620414, at *1 ......................................... 15

*Matter of Lufthansa Technick AG*,
  No. C17-1453-JCC, 2019 WL 280000, at *1 (W.D. Wash. Jan. 22, 2019) ............. 15

*Mees v. Buiter*,
  793 F.3d 291 (2nd Cir. 2015) ............................................................... 13

*See Brandi-Dohorn v. IKB Deutsch Industriebank AG*,
  673 F.3d 76, 81 (2d Cir. 2012) ............................................................. 18

**Statutes**

28 U.S.C. § 1782 ..................................................................... passim

28 U.S.C. § 1782(a) .............................................................. 11, 12, 14, 16

542 U.S. § 265 .......................................................................... 18

Applicant Core Compass Limited ("Core Compass" or "Applicant"), by and through its undersigned counsel, hereby brings the instant Application to Conduct Discovery Pursuant to 28 U.S.C. § 1782 ("Application") for the entry of an order granting Applicant leave to subpoena documents and testimony from EDYL Management LLC ("EDYL Management") and its sole owner and operator, Paul Lyden ("Lyden") (collectively "Respondents"), for use in foreign litigation. This Application is supported by the Declarations of Meri Leba and Michael Jason Lee, Esq. Applicant respectfully requests that this Application be granted in its entirety.

DATED:    April 18, 2023            **LAW OFFICES OF MICHAEL JASON LEE, APLC**

By: _/s/ Michael Jason Lee_
      Michael Jason Lee
      Attorney for Applicant
      CORE COMPASS LIMITED

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Applicant seeks an order allowing it to subpoena documents and testimony from Respondents as they possess information concerning funds owed to Applicant by a related entity, Boom Financial Management d.o.o. ("Boom Financial").  As more fully described herein, Applicant contracted with Boom Financial to serve as a payment processor or "paymaster" for one of Applicant's merchant clients (hereinafter, "CCClients"). As paymaster, Boom Financial used its relationship with a third-party bank—Evolve Bank—to process various debit and credit card transactions on behalf of CCClient. Boom Financial, however, failed to remit funds owed to Applicant and its client for these transactions. In total, Boom Financial owes Applicant approximately $262,437.52.

Following its investigation and the subpoenaing of documents from Evolve Bank, Applicant believes approximately $67,111.76 of these missing funds were processed through a merchant account held by EDYL Management.  (Declaration of Meri Leba ("Leba Decl.") at ¶ 31; Declaration of Michael Jason Lee ("Lee Decl.") at ¶ 3.) Applicant believes these funds have been further directed from EDYL Management to Boom Financial, or its principals, sub-agents, and/or other representatives or associated entities. Indeed, through the instant Application, Core Compass seeks to discover the network of payment processing companies and related entities that Boom Financial has used to misappropriate its and its client's funds, as well as the location of the funds themselves.

Core Compass intends to use this information as part of a lawsuit against Boom Financial. Applicant anticipates having to bring suit in the Republic of Serbia, where Boom Financial was formed and registered and in which it is believed to be currently operating. (*Id.* at ¶ 4.)

Through the instant application, Applicant seeks the aid of this Court in obtaining testimony and documents from Respondents concerning (1) CCClient's

2

transactions and/or the payments owed to Applicant (Exh. 1 to Lee Decl., Nos. 1-2, 11-16); (2) EDYL Management's communications with and documents relating to EDYL Management's business bank account and merchant account with Evolve Bank (Exh. 1 to Lee Decl., Nos. 18-19); (3) EDYL Management's communications with and documents relating to Boom Financial and related entities and individuals relating to these transactions (Exh. 1 to Lee Decl., Nos. 3-10, 15-17); (4) EDYL Management's Evolve Bank application materials, including documents supporting the financial and similar representations made by EDYL Management in its application (Exh. 1 to Lee Decl., Nos. 20-30), as well as documents submitted to Evolve Bank during the bank's due diligence process (Exh. 1 to Lee Decl., Nos. 31-36).  (Lee Decl. at ¶ 6.)  The discovery sought is relevant to determine: (1) the details behind EDYL Management's business and merchant account through which $67,111.76 of CCClient's transactions were processed; (2) the details behind Boom Financial and Boom Financial-related payment processing entities involved in misappropriating funds owed to Core Compass and CCClient; and (3) how Boom Financial-related entities like EDYL Management were controlled by Boom Financial and the process in which these entities submitted merchant applications and related supporting materials to obtain MIDs under fraudulent pretenses. (*Id.*)

## II.    FACTUAL BACKGROUND

### A.    The Relevant Entities (Applicant Core Compass Limited and Boom Financial)

Core Compass is a Hong Kong-registered company that provides payment consulting services to internet businesses.  Core Compass' clients ("merchants") provide products and services to their respective customers in exchange for payments made via debit and credit cards, including those issued by Visa and Mastercard. (Leba Decl. at ¶ 3.)

At bottom, the dispute underlying this Application concerns funds owed to one of Core Compass' merchant clients - CCClient.  (*Id.* at ¶ 4.)  Responsibility for the

receipt and collection of these funds, however, was contractually delegated to Core Compass in January 2022 as part of its payment consulting services, which include managing and collecting payments on behalf of the merchant. (*Id.*)

As part of its services, Core Compass sources and engages third-party payment processors to act as intermediaries between banks and Core Compass' merchants (like CCClient) to process debit and credit card payments. (*Id.* at ¶ 5.) The payment processor in this matter is Boom Financial. (*Id.*)

As part of its service, the payment processor will provide one or more unique Merchant Identification Numbers ("MIDs"). (*Id.* at ¶ 6.) A MID is an account-type code given to a business by a payment processor before the merchant can begin processing payment transactions through a particular banking channel. (*Id.*)

A payment processor typically has an existing arrangement with an "acquiring bank" who acquires (a/k/a processes) merchants' transactions through an electronic gateway, settles and clears the amounts in the merchants' accounts, and then transmits the merchants' funds, less the bank's earned fees, to the payment processor via bank transfer. (*Id.* at ¶ 7.) In this case, the acquiring bank was Evolve Bank. (*Id.*)

Upon receiving transfers from the acquiring bank, a payment processor is typically supposed to transmit payment, less the payment processor's fee (usually a modest percentage of the gross amount processed), to the merchants or, as is the case here, to a payment processing facilitator like Core Compass. (*Id.* at ¶ 8.) This payment represents the net payment from the underlying merchant's customers for the merchant's products and/or services. (*Id.*) The role of transmitting revenues to merchants sourced from the card payments of their respective customers has been referred to in the e-commerce industry as a "paymaster" function. (*Id.* at ¶ 9.) Thus, there are often four main parties to a typical merchant transaction:

- The merchant (Core Compass' client);
- The payment processing facilitator (Core Compass);
- The payment processor and paymaster (Boom Financial); and

4

- The acquiring bank (Evolve Bank).

(*Id.*)  The dispute underlying this Application is centered on Boom Financial's failure to remit $262,437.52 to Core Compass, which it is believed to have received either directly from Evolve Bank or indirectly through one or more entities that Boom Financial controls or subcontracted to, including EDYL Management[1].  (*Id.* at ¶ 10.)

### B.    Additional Factual Allegations Underlying the Foreign Action

On or about April 2022, Core Compass identified Boom Financial as a suitable payment processing partner for its merchant clients.  (*Id.* at ¶ 11.)  Boom Financial represented itself to Core Compass as a payment processing brokerage house with acquiring and banking relationships in Europe.  (*Id.*)  On information and belief, the services contracted between Core Compass and Boom Financial were ultimately controlled by an individual named Rodney Hsu ("Hsu") through one or more companies he controlled with merchant accounts issued by Evolve Bank, although Core Compass was unaware of this at the time.  (*Id.* at ¶ 12.)

Boom Financial did not reveal to Core Compass which bank would be used for acquiring, which is not unusual.  (*Id.* at ¶ 13.)  A payment processor's relationship with a financial institution is sometimes part of their value proposition.  (*Id.*)  However, Boom Financial did specifically represent to Core Compass that the acquiring bank was in either Serbia or Bulgaria and, by extension, that the transactions would be acquired in one of those countries.  (*Id.* at ¶ 14.)  At no point did Boom Financial state or otherwise indicate that any part of processing or remittance services would take place with Evolve Bank or any other financial institution in the United States.  (*Id.*)

Boom Financial and Core Compass engaged in several preliminary discussions in April and May 2022, with the entities agreeing upon a Term Sheet on April 22,

---

[1] Bank records produced by Evolve Bank show that EDYL Management was one of several merchant accounts used by Boom Financial to process Applicant's merchant client's payment transactions.  (Leba Decl. at ¶ 31.)

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782;
MEMORANDUM OF POINTS AND AUTHORITIES

2022.  The companies undertook the technical integration required for handling transactions shortly thereafter.  (*Id.* at ¶ 15.)  At that time, a full written agreement was still being negotiated with the intention of it being finalized in the near future.  (*Id.* at ¶ 16.)  However, the written agreement was never finalized, and by extension, there is no fully executed governing agreement between Boom Financial and Core Compass.  (*Id.*)

In practice, this meant that when CCClient sought to process its customers' payment transactions, Boom Financial would provide merchant accounts ("MID accounts") which it represented were owned and operated by it or its related entities.  (*Id.* at ¶ 17.)  Payments for successfully processed transactions (i.e., approved transactions) were then to be sent by the acquiring bank on a regular basis to a bank account in the merchant's name, albeit an account controlled by Boom Financial.  (*Id.*)  Instead, Boom Financial appears to have subcontracted most or all of this to Hsu and his companies, who processed the transactions using merchant accounts issued by Evolve Bank to United States-based companies either controlled or related to Hsu.  (*Id.* at ¶ 18.)

Regardless, upon receipt of the funds, Boom Financial was required to remit them (less its fee) to Core Compass.  (*Id.* at ¶ 19.)  Boom Financial was also required to compile and send weekly settlement reports to Core Compass to help monitor and reconcile CCClient's transactions, which it failed to do.  (*Id.* at ¶ 20.)  The first transaction was processed on or about May 19, 2022 and the last transaction was processed on or about June 10, 2022.  (*Id.* at ¶ 21.)  Yet only one settlement report, covering transactions up to May 22, 2022, was ever received, thereby leaving approximately three weeks of transactions unaccounted for.  (*Id.*)

### C.   Processing Problems Emerge and Boom Financial Fails to Make a Single Payment of the $262,437.52 Owed to Core Compass

Core Compass experienced payment delays with Boom Financial almost immediately after processing commenced.  (*Id.* at ¶ 22.)  Indeed, as it would turn out,

Boom Financial has never remitted so much as one payment to Core Compass. (*Id.* at ¶ 23.) At present, Core Compass believes that Boom Financial has failed and refuses to timely remit a total of **$262,437.52** owed to Applicant. (*Id.*)

In response to these issues, Applicant repeatedly pressed Boom Financial for details on the whereabouts of the unpaid funds. (*Id.* at ¶ 24.) Unfortunately, no meaningful details have been provided in response and payments for the overdue funds remain outstanding. (*Id.*) Ultimately, on June 21, 2022, Boom Financial sent an e-mail to Applicant in which it claimed some portion of the funds were owed from another service provider. (*Id.* at ¶ 25.) Specifically, Boom Financial claimed that a processor named Cozeni Technologies Ltd. ("Cozeni") had run some portion of CCClient's transactions and thus owed money to Boom Financial. (*Id.*) However (and strangely), both Cozeni and Boom Financial appear to be owned and controlled by the same individual—Hsu. (*Id.* at ¶ 26.) As such, Applicant believes that Boom Financial is engaging in a misdirection motivated shell game for the purposes of misappropriating its funds. (*Id.*)

### D. Evolve Bank Documents Identify EDYL Management as a Merchant Account Used in Boom Financial's Payment Processing Architecture

In addition to the issues discussed in Section II.C, *supra*, investigations into Boom Financial revealed that transactions have been processed through merchant accounts issued by Evolve Bank to various unknown merchant companies using different transaction descriptors (these are the merchant descriptors that appear on a cardholder's credit card statement). (*Id.* at ¶ 27.)

For example, on May 20, 2022, CCClient customers reported that they had seen charges on their credit card statements reflecting unknown company descriptors, such as "Pro Health Exchange" and "Iron Masterminds." (*Id.* at ¶ 28.) Applicant has since learned that at least 20 different descriptors were used by unknown companies

to process CCClient customers' transactions.  Those descriptors are as follows[2]:

    1.    Active Wear Now
    2.    Activate Wears
    3.    AdmireTime
    4.    beblexpetcompany.com
    5.    beshreddedshop.com
    6.    Be Shredded Shop
    7.    ClearOne API
    8.    FAB LOWS
    9.    forevermorehealth.com
    10.   homelightsus.com
    11.   HOMELIGHTUS
    12.   Hundred Shred
    13.   Iron Masterminds
    14.   Mastermyhealthnow
    15.   My Lux Look
    16.   Powershield Pro
    17.   Pro Health Exchange
    18.   SHREDZ BAR
    19.   SmartBod Club
    20.   Strong Steady

(*Id*.)

On September 21, 2022, Applicant filed a § 1782 discovery application with the United States District Court for the Western District of Tennessee, seeking production from Evolve Bank of the account records (including account opening and supporting materials) of the specific companies to which these many descriptors correspond.  (*Id*. at ¶ 29.)

On November 9, 2022, the Western District of Tennessee Court entered an Agreed Order granting Core Compass leave to obtain the requested targeted discovery from Evolve Bank for use in the anticipated Serbian litigation.  (*Id*. at ¶ 30.)

On December 6, 2022, Evolve Bank produced documentation regarding merchant accounts tied to Boom Financial, including EDYL Management's

---

[2] The descriptors sometimes vary slightly but are substantively the same.  For example, "Pro Health Exchange" has also appeared as "PROHEALTHEXCHANGE".

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782;
MEMORANDUM OF POINTS AND AUTHORITIES

Merchant Account. (*Id*. at ¶ 31.)  Specifically, Applicant reviewed merchant applications and supporting documents produced by Evolve Bank and determined that the descriptor "mastermyhealthnow" corresponds with: (1) EDYL Management; (2) MID No. 970100009078; (3) MID account open date: 7/16/21; (4) MID account close date: 6/10/22; (5) Bank of America, NA Settlement Account, Account Number 325137834099; (6) 100% Owner Paul Lydel of Vista, California; (7) 631 successful deposits; and (8) a total amount of CCClient deposits believed to be successful - $67,111.76. (*Id*.)

Based on investigations completed to date, Applicant suspects that EDYL Management was controlled in some manner by Boom Financial and submitted its merchant application and related supporting materials to obtain its MID under fraudulent pretenses. (*Id*. at ¶ 33.)

### E.    Foreign Proceedings

Based on the foregoing, once Applicant has the information and documentation responsive to the proposed subpoenas in-hand, it intends to initiate legal proceedings against Boom Financial before the Court in Serbia. (Lee Decl. at ¶ 4.)  (As noted above, Boom Financial was formed and registered in Serbia and is believed to be currently operating in that country.)

## III.    THE CONTEMPLATED DISCOVERY

Applicant now seeks the assistance of this Court in obtaining information critical to its efforts to recover the funds it is owed. (*Id*. at ¶ 5.)  As set forth above, the contemplated discovery is narrowly tailored to the facts and circumstances surrounding EDYL Management's involvement in the events described herein, as well as the network of Boom Financial-related payment processing entities involved in misappropriating funds owed to Core Compass and CCClient. (*Id*.)

By this Application, Applicant seeks to obtain relevant testimony and records relating to:

*///*

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782;
MEMORANDUM OF POINTS AND AUTHORITIES

1

2

3

| Deposition Topics and Document Requests | Relevance to Anticipated Serbian litigation |
|---|---|
| CCClient's transactions and/or payments owed to Applicant (Nos. 1-2, 11-16) | Relevant to determine the details behind EDYL Management's business and merchant account through which CCClient's transactions were processed in the amount of $67,111.76 |
| EDYL Management's communications with and documents relating to: (1) EDYL Management's business bank account (Wells Fargo, NA Bank Account No. 325137834099), which was identified to Evolve Bank as the Platform Settlement Account / Account for Deposits; and (2) EDYL Management's Merchant Account with Evolve Bank, MID No. 970100009078 (Nos. 18-19) | Relevant to determine the details behind EDYL Management's business and merchant accounts through which CCClient's transactions were processed in the amount of $67,111.76 |
| EDYL Management's communications with and documents relating to Boom Financial and related entities and individuals relating to these transactions (Nos. 3-10, 15-17) | Relevant to determine the details behind Boom Financial and Boom Financial-related payment processing entities involved in misappropriating funds owed to Core Compass and CCClient. |
| EDYL Management's Evolve Bank application materials, including documents supporting the financial and similar representations made by EDYL Management in its application (Nos. 20-30), as well as documents submitted to Cardflex Inc. dba Cliq ("Cliq") as part of Evolve Bank and Cliq's due diligence process (Nos. 31-36) | Relevant to determine how Boom Financial-related entities like EDYL Management were controlled by Boom Financial and the process in which these entities submitted merchant applications and related supporting materials to obtain MIDs under fraudulent pretenses |

On information and belief, Applicant's requests should not yield a significant volume of documents.  (*Id.* at ¶ 7.)  Further to the same, the requests within the

10

proposed subpoena are narrowly tailored to the allegations underlying the dispute, including the specific payment transactions in question.  (*Id.*)

## IV.   APPLICANT'S LOCATION

Applicant is incorporated in Hong Kong SAR with its principal place of business located in 25/F Workington Tower, 78 Bonham Strand, Sheung Wan, Hong Kong.  (Leba Decl. at ¶ 34.)

## V.   LEGAL STANDARD

The fundamental purpose of § 1782 is to provide a procedure whereby a qualified applicant may obtain "federal-court assistance in gathering evidence for use in foreign tribunals."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2nd Cir. 2018).  Under 28 U.S.C. § 1782(a), "[t]he district court in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . [t]he order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced before a person appointed by the court."  The policy behind § 1782 is to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful, but, for reasons having no bearing on international comity, they cannot obtain under their own laws."  *Intel,* 542 U.S. at 262.

A district court is authorized to grant an application for discovery under Section 1782 if the following three statutory requirements are met:

(1)   the person from whom discovery is sought resides or is found within the district;

(2)   the discovery is for use in a proceeding before a foreign or international tribunal; and

(3)   the application is made by a foreign or international tribunal or any interested person.

11

*Khrapunov v. Prosyankin,* 931 F.3d 922, 925 (9th Cir. 2019), citing 28 U.S.C. § 1782(a).

If the statutory requirements are met, a district court may, in its discretion, grant the application. The Supreme Court has identified four discretionary factors that the district court should consider when ruling on an application made under Section 1782:

> (1)    whether the person from whom the discovery is sought is a participant in the foreign proceeding;
>
> (2)    the nature of the foreign tribunal, the character or the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;
>
> (3)    whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign county or the United States; and
>
> (4)    whether the § 1782 application contains unduly intrusive or burdensome discovery requests.

*Id.  (citing Intel*, 542 U.S. at 264-265).

## VI.    ARGUMENT

### A.    All Statutory and Discretionary Factors Favor Permitting the Requested Discovery

The highly relevant and narrowly tailored discovery sought by Core Compass from EDYL Management, and its sole owner Lyden, is precisely the type of discovery contemplated by Section 1782. Core Compass's Section 1782 application satisfies each of the statutory factors, and the discretionary factors all favor permitting Core Compass to take the requested, limited third party discovery from Respondents.

///

///

///

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782;
MEMORANDUM OF POINTS AND AUTHORITIES

1    **1. Core Compass's Application Satisfies the Statutory**

2     **Requirements**

3    **a) Applicant Is an "Interested Person."**

4  As explained above, Applicant will be party to a foreign proceeding in Serbia.

5 Notwithstanding that the proceeding has not yet been initiated, Applicant still

6 qualifies as an "interested party." *See Intel*, 542 U.S. at 256 (An 'interested person'

7 "plainly reaches beyond the universe of persons designated 'litigant'"). Moreover,

8 once the litigation has ensued, as a party in foreign litigation, Applicant will further

9 satisfy the "interested person" requirement of Section 1782. *Intel*, 542 U.S. at 256

10 ("No doubt litigants are included among, and may be the most common example of,

11 the 'interested person[s]' who may invoke Section 1782."); *see also In re LVL-USA*

12 LLC, 2020 WL 6051310, at *2 (a party to foreign litigation is an interested person

13 under Section 1782).

14    **b) The Requested Discovery Is for Use in Conjunction with**

15     **Proceedings Before Foreign Tribunals.**

16  As discussed above, Applicant seeks discovery from EDYL Management and

17 its owner to obtain background information specific to its merchant account through

18 which CCClient's payment transactions were processed. Applicant seeks this

19 information to facilitate recovery of unpaid funds in proceedings before the Court in

20 Serbia. (Lee Decl. at ¶ 4.)

21  While Section 1782 requires that the evidence sought be "for use in a

22 proceeding in a foreign or international tribunal," the Supreme Court has rejected the

23 view that "Section 1782 comes into play only when adjudicative proceedings are

24 'pending' or 'imminent.'" *Intel*, 542 U.S. at 259. Rather, it held that a foreign

25 proceeding only had to be "within reasonable contemplation." *Id.* (citation omitted);

26 *Mees v. Buiter*, 793 F.3d 291, 299 (2nd Cir. 2015) (rejecting argument that pre-

27 litigation discovery sought via § 1782 required a showing that applicant could not

28 commence foreign proceeding absent the discovery sought).

In deciding whether this requirement of § 1782 is met, the district court should ask whether "there [is] sufficient indication that a proceeding in court would eventuate in which the evidence gathered can be weighed impartially." *In re Letter of Request from Crown Prosecution Serv. Of United Kingdom*, 870 F.2d 686, 691 (D.C. Cir. 1989). Where the applicant sets forth the documents it desires, the information it expects to find, and the reasons it would use the documents, the court can reasonably conclude that a foreign proceeding is within reasonable contemplation. *In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988), abrogated on other grounds by *Intel*, 542 U.S. 241.

Here, commencement of a foreign proceeding is being contemplated, as identified above. The fact that foreign proceedings have not yet commenced is of no moment. Indeed, in *Intel*, the Supreme Court held that "Section 1782(a) does not limit the provision of judicial assistance to pending [or imminent] adjudicative proceedings." 542 U.S. at 258. The *Intel* Court held that Section 1782(a) should be read only to require that it be "within reasonable contemplation" that the evidence sought would be used in a dispositive proceeding." *Id.* (citing *In re Crown Prosecution Serv.*, 870 F.2d 686, 691; *see also In re Letters Rogatory Issued by the National Court of First Instance in Commercial Matters N.23 of the Fed. Capital of the Argentinean Republic*, 144 F.R.D. 272, 277 n.4 (3d Cir. 1992) (rejecting argument that a "pending" proceeding is required under Section 1782); *In the Matter of the Application of Oxus Gold PLC For Assistance Before a Foreign Tribunal*, 2007 U.S. Dist. LEXIS 24061, at *18 (D.N.J. April 2, 2007) (requirements of Section 1782 satisfied where applicant alleged that claim would be litigated in "near future").

Thus, this factor also favors granting the requested discovery.

### c) Paul Lyden Resides in and Can Be Found in the Southern District of California.

EDYL Management is solely owned and operated by Paul Lyden, who lives and resides at 885 Wandering Road 9 in Vista, California, which is in San Diego

14

1   County and in this district.  Lyden satisfies the statutory requirement that he "resides

2   or is found" in this district.  (Lee Decl. at ¶¶ 11, 13, 15.)

3               d)        **EDYL Management Resides in and Can Be Found in the**

4                         **Southern District of California.**

5           EDYL Management is a limited liability company organized under the laws of

6   California.  (Lee Decl. at ¶ 12.)    The company's sole member, 100% owner, and only

7   operator, is Lyden, who lives, resides and therefore performs all work for EDYL

8   Management in this district.  (Lee Decl. at ¶¶ 11-15.)   All such work by Lyden,

9   EDYL Management's owner/operator/manager/controlling person, is performed in

10  this district, and EDYL's presence in this district is systematic and continuous.  (*Id.*)

11  Certainly, a business's sole owner and operator conducting all company business in

12  this district would equate to the company "residing" or being "found" in this district.[3]

13  (*Id.*)

14          As such, both Lyden and EDYL Management are within this Court's

15  jurisdiction and subject to its authority over the requested discovery sought by

16  Applicant.

17          In sum, Core Compass satisfies the three statutory requirements of Section

18  1782 as well as the policy aims of the statute.   Accordingly, discovery pursuant to

19  Section 1782 is appropriate and the Court should grant Core Compass's Application.

20  ///

21  ///

22

23  [3] District courts in the Ninth Circuit have ruled that a business entity's "presence" in the district
    satisfies this requirement, *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-MC-80215-
24  WHO, 2020 WL 820327, at *3 (N.D. Cal. Feb. 19, 2020).  Having an office in the district is
    sufficient. *Koninklijke Philips N.V.*, 2018 WL 620414, at *1 (finding entity satisfied the first
25  statutory requirement because it "maintain[ed] its principal place of business" in San Diego, in the
    Southern District of California); s*ee, also In re Application of Credit Suisse Virtuoso SICAV-SIF*,
26  No. 21-MC-80308-JCS, 2022 WL 1786050, at *7 (N.D. Cal. June 1, 2022); *Matter of Lufthansa
    Technick AG*, No. C17-1453-JCC, 2019 WL 280000, at *1 (W.D. Wash. Jan. 22, 2019) (finding that
27  corporate office within district "which conducts key business functions" satisfied § 1782); *In re
    Super Vitaminas, S.A.*, 2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017); *In re Ex Parte
28  Application of TPK Touch Sols. (Xiamen) Inc.*, 2016 WL 6804600, at *2 (N.D. Cal. Nov. 17, 2016).

15

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782;
MEMORANDUM OF POINTS AND AUTHORITIES

1
2

###### 2.     The Discretionary Factors Favor Granting the Requested Discovery

3
4

All four of the *Intel* discretionary factors weigh in favor of granting Core Compass's requested discovery from EDYL.

5

###### a)     Jurisdictional Reach of the Foreign Tribunal

6
7
8
9
10
11

The first discretionary factor weighs in favor of Core Compass's application because EDYL Management and Lyden will not be a party to the proceedings contemplated in Serbia.  As the Supreme Court noted: "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  *Intel*, 542 U.S. at 264.  As such, relief under § 1782(a) may not be warranted where the relevant tribunal does not need the assistance.  *Id.*

12
13
14
15
16
17
18

In contrast, here, Respondents possess evidence relevant in the foreign proceedings, but will not be a party there.  Indeed, Respondents will not be brought before any foreign tribunal for the purpose of obtaining the evidence currently in its possession, nor is the discovery sought from it within the jurisdictional reach of the courts of Serbia.  Nonetheless, documents in its possession are directly relevant to Applicant's contemplated claims in Serbia.  This weighs in favor of granting the Application.

19

###### b)     Nature and Receptivity of Foreign Tribunal

20
21
22
23
24

The second discretionary factor also weighs in favor of the requested discovery.  Under this factor, a court "may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court assistance."  *Intel*, 542 U.S. at 264.

25
26
27
28

There is no reason to believe that the court in Serbia would be unreceptive to this Court's grant of the discovery sought.  Serbia is also a party to the New York Convention.  Therefore, there is no reason to believe that the court in Serbia would object to this Court's assistance with discovery that will, by providing information

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782;
MEMORANDUM OF POINTS AND AUTHORITIES

concerning the transfers of Applicant's funds, facilitate the foreign proceedings and the potential recovery of those funds.

Further, the courts have held that the liberal policy of granting assistance favors allowing a petitioner the discovery sought so that the foreign court itself may determine the admissibility or relevance of the evidence obtained. *See In re Euromepa S.A.*, 51 F.3d 1095, 1099-1100 (2d Cir. 1995) (explaining that "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," and that "[a]bsent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'"); *In re Application of Grupo Qumma*, No. M 8-85 (DC), 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005) ("The Mexican court, rather than this Court, should decide whether the additional evidence is admissible, and it will be in a better position to do so if Qumma is permitted to conduct the requested discovery first."). "Parties that apply for discovery under § 1782 enjoy a presumption in favor of foreign tribunal receptivity that can be offset by reliable evidence that the tribunal would reject the evidence." *Government of Ghana v. ProEnergy Servs.*, LLC, 2011 U.S. Dist. LEXIS 75029 at *12 (W.D. Mo. June 6, 2011) (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099-100 (2d. Cir.1995) ("[W]e believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782"). Here, there is no evidence that the Serbian Court would reject evidence obtained from Respondents pursuant to § 1782.

### c)    Attempt to Circumvent Foreign Proof-Gathering Restrictions and Policies

This discretionary factor examines "whether the § 1782(a) request conceals an

17

attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65; *see also, In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf*, Case No. M19-88, 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006).   There is nothing to suggest that Core Compass's Application is an attempt to circumvent foreign proof-gathering restrictions.   The requested discovery is centrally relevant to the contemplated proceeding in Serbia and would not conflict with or circumvent any foreign proof-gathering restrictions.   Applicant's request here is made in good faith and not for purposes of harassment.   *See Brandi-Dohorn v. IKB Deutsch Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012).   Thus, 28 U.S.C. § 1782 is a proper and necessary method by which to obtain the critical evidence sought by Applicant.

### d)     Unduly Intrusive or Burdensome Request

Under this discretionary factor, a court must consider whether the discovery sought is unduly intrusive or burdensome.   *See Intel*, 542 U.S. at 265 ("unduly intrusive or burdensome requests may be rejected or trimmed").

The narrowly tailored discovery proposed under the subpoenas will not be onerous for EDYL Management or Lyden.   *See* Application, Exhs. 1-5.   In this instance, Applicant seeks information and documents from Respondents narrowly tailored to EDYL Management's relevant records relating to CCClient's transactions and/or payments owed to Applicant, EDYL Management's communications with Boom Financial relating to these transactions, EDYL Management's Evolve Bank application materials, and documents supporting financial and similar representations made by EDYL Management in its Evolve Bank application, documents relating to the details behind EDYL Management's merchant account through which CCClient's transactions were processed in the amount of $67,111.76, and, in turn, the specifics of Boom Financial's payment processing architecture to facilitate recovery of unpaid funds in proceedings before the Court in Serbia.   It is unlikely that such information or documentation would be voluminous or difficult to search for and produce.

Accordingly, this factor also weighs in favor of granting the instant Application.

Core Compass recognizes that the documents it seeks may be confidential and proprietary to EDYL Management and Lyden. Accordingly, if necessary, Core Compass is willing to enter into an appropriate confidentiality regime governing the confidentiality of Respondents' documents.

**VII.  CONCLUSION**

For the foregoing reasons, the Court should grant Applicant's leave to issue and serve on EDYL Management and Lyden the discovery attached to its Application as Exhibits 1-5.

DATED:      April 18, 2023               **LAW OFFICES OF MICHAEL JASON LEE, APLC**

By: */s/ Michael Jason Lee*
         Michael Jason Lee
         Attorney for Applicant
         CORE COMPASS LIMITED

APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782;
MEMORANDUM OF POINTS AND AUTHORITIES